IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN MAXWELL MONTIN,  )<br>                              )<br>            Plaintiff,    )<br>                              )<br>     v.                      )<br>                              )<br>BILL GIBSON, CEO, DR. Y.      )<br>SCOTT MOORE; DR. RAJEEN       )<br>CHATURVEDI; and MARC          )<br>OSTRANDER,                    )<br>                              )<br>            Defendants.   )<br>_____) | 4:09CV3153<br><br><br>MEMORANDUM OPINION |

This matter is before the Court on defendants' Motion for Summary Judgment (Filing No. 77).  Also pending are two objections filed by plaintiff John Maxwell Montin ("Montin") (Filing Nos. 91 and 96), and two corresponding Motions to Strike filed by defendants (Filing Nos. 92 and 97).  For the reasons discussed below, defendants' Motion for Summary Judgment will be granted, defendants' Motions to Strike will be denied and Montin's objections will be denied.

I.  BACKGROUND

Montin is a patient at the Lincoln Regional Center ("LRC") in Lincoln, Nebraska (Filing No. 1 at CM/ECF p. 1). Montin filed his original complaint in this matter on July 17, 2009, alleging defendants violated his constitutional rights by removing his personal computer on July 1, 2009.  (*Id*. at CM/ECF pp. 1, 6, 8.)  After initial review, the Court determined that Montin's complaint failed to state a claim upon which relief

could be granted (Filing No. 8 at CM/ECF p. 6). However, the Court granted Montin the opportunity to amend. (*Id*. at CM/ECF pp. 6-7.)

On September 29, 2009, Montin filed an amended complaint (Filing No. 13). After reviewing the amended complaint, the Court permitted this matter to proceed to service (Filing No. 14). Montin had until April 26, 2010, to perfect service of process on defendants. (*Id*. at CM/ECF p. 2.) On February 4, 2010, the clerk of the court issued summons for Bill Gibson ("Gibson") and Marc Ostrander ("Ostrander") in both their official and individual capacities, and Y. Scott Moore ("Moore") and Rajeen Chaturvedi ("Chaturvedi") in their individual capacities only (Filing No. 15). On February 23, 2010, the summonses were returned as "executed." (Filing Nos. 16, 17, 18, 19, 20, and 21.) The summons forms were served by the United States Marshal and each was directed to be served on defendants at the "Lincoln Regional Center." (Filing Nos. 16, 17, 18, 19, 20, and 21.)

On April 9, 2010, defendants filed a motion to dismiss along with an index of evidence in support (Filing Nos. 24 and 25). In their motion, defendants argued that Montin failed to properly execute service of process on defendants (Filing No. 24). In addressing this motion, the Court determined that Montin had failed to properly serve defendants in both their individual

and official capacities (Filing No. 27). However, the Court denied defendants' motion to dismiss and gave Montin an additional 30 days in which to perfect service of process on defendants. (*Id*. at CM/ECF pp. 4, 6.) In doing so, the Court warned Montin that failure to properly serve defendants by the deadline would result in the dismissal of his claims. (*Id*. at CM/ECF p. 6.)

On July 27, 2010, defendants filed a second motion to dismiss (Filing No. 37). In their motion, defendants stated that Montin perfected service upon Gibson in both his individual and official capacity and Ostrander in his official capacity only (Filing No. 37 at CM/ECF p. 1). However, defendants also argued that Montin failed to serve Moore, Chaturvedi, and Ostrander in their individual capacities. (*Id*. at CM/ECF pp. 1-2.) Montin did not respond, and on September 8, 2010, the Court dismissed plaintiff's individual capacity claims against Moore, Chaturvedi, and Ostrander (*See* Filing No. 39).

On September 22, 2010, Montin filed a motion for stay, which the Court liberally construed as a motion to reconsider the Court's September 8, 2010, Memorandum and Order (Filing Nos. 41 and 43). In his motion, Montin argued that defendants wrongfully prevented service of process by the United States Marshal (Filing No. 41).

On November 8, 2010, the Court granted Montin's motion to reconsider and directed defendants to supplement the record with information to show the steps that the United States Marshals took to locate Moore, Chaturvedi, and Ostrander (Filing No. 43). Defendants complied with the Court's Memorandum and Order and had no objection to providing Montin with an additional opportunity to serve Moore, Chaturvedi, and Ostrander (Filing Nos. 44 and 45). As a result, the Court provided Montin with one last opportunity to serve Moore, Chaturvedi, and Ostrander in their individual capacities (Filing No. 48).

On April 20, 2011, summonses were returned executed upon Ostrander, Chaturvedi, and Moore (Filing Nos. 50, 51 and 52). Defendants filed an amended answer (Filing No. 56) and the Court entered a progression order (Filing No. 57). After engaging in discovery, defendants filed a motion for extension of progression dates (Filing No. 70). On August 8, 2011, the Court granted defendants' motion and entered a second progression order providing that all dispositive motions should be filed on or before October 28, 2011 (Filing No. 71).

On October 28, 2011, defendants filed a motion for summary judgment along with a brief and index of evidence in support (Filing Nos. 77, 78 and 79). On November 8, 2011, defendants moved to file a supplemental brief (Filing No. 80). The Court granted this motion and also provided Montin with

additional time to file an opposing brief. (*Id*.) On December 21, 2011, Montin filed a brief in opposition to defendants' motion for summary judgment along with an index of evidence and separate statement of undisputed material facts (Filing Nos. 86, 87, and 88). Thereafter, defendants filed a timely reply brief in support of their motion for summary judgment (Filing No. 94), and an additional index of evidence (Filing No. 95). Montin has also filed two objections to defendants' evidence (Filing Nos. 91 and 96). Defendants have moved to strike these objections (Filing Nos. 92 and 97).

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on

-5-

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendants have submitted a statement of material facts in accordance with the Court's Local Rules and properly authenticated evidence (*See* Filing Nos. 78, 79, 85, 94 and 95). Montin has responded (*See* Filing Nos. 86, 87, and 88). Accordingly, this matter is deemed fully submitted and the Court adopts the relevant undisputed facts set forth below.

## II.   RELEVANT UNDISPUTED FACTS[1]

1. In May 2006, the LRC issued Policy IM-02 (LRC). This policy provides that:

> In order to protect the patient and minimize risk to the hospital, computer/internet access and use by patients residing at the Lincoln Regional Center will be as follows:
>
>   A.  Patients will not have access to personally-owned computers. Any other related electronic equipment patients may use on the unit while in the hospital need to be approved by the treatment team. If computers or other related electronic equipment are brought in to the hospital,

---

[1] The Court notes that Montin objects to several documents in defendants' index of evidence (i.e. Filing Nos. 79-2 through 79-8) (Filing No. 91). Montin argues that these documents are "immaterial" because defendants have "admitted" to the material issues of his complaint in Filing No. 79-9. (*Id*.) The Court disagrees and will consider the content in defendants' index of evidence that is undisputed by Montin.

> these will be marked and stored (as per policy) with the patient's other belongings. IS&T staff will not provide technical support for any non-state equipment or non-state business.
>
> B. Patients may access the internet as approved by the treatment team only on a State-authorized computer. Patients accessing the internet must be monitored by staff at all times. Staff will report any inadvertent access to sites of an inappropriate nature. Staff will document such access on an Unusual Occurrence Form, and submit this report to the Facility Operations Officer by the end of the shift.
>
> C. Concerns regarding internet use by patients will be referred to the treatment team. Repeated misuse of State equipment may result in loss of computer privileges.

(Filing No. 79-8.)

2. Despite Policy IM-02 (LRC), and other LRC policies related to patient personal property, Montin was permitted to use a personally-owned computer. This privilege was memorialized in a June 12, 2009, statement. The statement was signed by Ostrander and Montin, specifically providing that:

> John Montin has been allowed the privilege of having his own personal computer, a privilege that is not given to any other patient. Therefore, effective July 1, 2009, John must maintain Level III of the program to continue to have the privilege of having his own

>           computer.  Should John fail to
>           maintain level III he will lose
>           this privilege and will not be
>           allowed to earn it back.

(Filing No. 79-9.)

      3.    The Level System referred to in the June 12, 2009, statement is designed to provided an incentive for patients to cooperate in their treatment programs.  A refusal to participate in treatment results in a failure to earn points towards privileges (Filing No. 87 at CM/ECF pp. 16-17); *see also* Case No. 4:08CV3082, Filing No. 56-2 at CM/ECF pp. 2-3.[2])

---

[2] To support his claims, Montin has filed a copy of an affidavit Moore filed in a previous case.  (*See* Case No. 4:08CV3082, Filing No. 56-2.)  In Case Number 4:08CV3082, Montin claimed that he was being punished for exercising his right to refuse medical treatment by a "points based behavioral modification treatment program" that the LRC implemented in 1997 and 1998.  (Case No. 4:08CV3082, Filing No. 1 at CM/ECF pp. 4-5.)  Ultimately, the Court dismissed Montin's claims because they were barred by the statute of limitations.  (Case No. 4:08CV3082, Filing Nos. 83 and 84.)  The Eighth Circuit Court of Appeals summarily affirmed this decision.  (Case No. 4:08CV3082, Filing Nos. 90 and 91.)

    In a separate but similar case, Case Number 4:07CV3271, Montin alleged that in 1998, the LRC changed its policies and unconstitutionally removed certain privileges and liberties, such as Montin's ability to take unsupervised walks.  (Case No. 4:07CV3271, Filing No. 8 at CM/ECF pp. 6-9.)  On September 1, 2009, this Court dismissed Case Number 4:07CV3271, concluding Montin's claims were barred by the applicable statute of limitations and that he was not entitled to equitable tolling.  (Case No. 4:07CV3271, Filing Nos. 70 and 71.)  However, the Eighth Circuit reversed and remanded Case Number 4:07CV3271.  (Case No. 4:07CV3271, Filing No. 87.)  In doing so, the Eighth Circuit directed this Court to reconsider whether Montin's mental condition entitled him to equitable tolling.  (*Id*.)  On remand, this Court dismissed Case Number 4:07CV3271 on the merits, concluding the LRC's policies regarding the termination of

4. Patients who achieve Level III demonstrate appropriate behavior and the ability to exercise reasonably good judgment. As a result, Level III patients receive the most privileges at the LRC (Filing No. 79-1 at CM/ECF p. 2).

5. Because Montin failed to attend group therapy sessions and otherwise engage in therapeutic activities deemed necessary for his treatment, he lost his Level III status. As a result, Montin's personally-owned computer was removed from his room and stored pursuant Policy IM-02 (LRC) (Filing No. 79-4 at CM/ECF p. 4; Filing No. 86 at CM/ECF pp. 1-2).

6. LRC patients currently have access to televisions and computers in common or recreational areas during prescribed hours (Filing No. 79-4 at CM/ECF p. 3).

**III.   ANALYSIS**

  **A.   Defendants' Motions to Strike**

Defendants ask the Court to strike Montin's objections to their evidence because Montin failed to comply with the Court's local rules when he filed them (Filing Nos. 92 and 97). Before filing his objections, Montin filed a timely brief, index of evidence, and statement of material facts in opposition to

---

unsupervised walks was not a substantial departure from professional judgment and that Montin's due process rights were not violated. (Case No. 4:07CV3271, Filing Nos. 120 and 121.)

Montin's current claims relate to the removal of his personally-owned computer in 2009. Therefore, the statute of limitations is not at issue in this matter.

defendants' motion for summary judgment (Filing Nos. 86, 87, and 88). However, he failed to request leave of court to file additional documents (i.e. his objections) in accordance with NECivR 7.0.1(c). NECivR 7.0.1(c) (providing that a moving party may reply to an opposing brief, however neither party may "file further briefs or evidence without the court's leave"). Nevertheless, motions to strike are viewed with disfavor and infrequently granted. *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). In light of this, and Montin's pro se status, the Court will not strike Montin's objections and defendants' motions to strike will be denied.

    **B.    Motion for Summary Judgment Standard**

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the Court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party

opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

C.  **Defendants' Motion for Summary Judgment**

Defendants argue, among other things, that they are entitled to summary judgment because Montin cannot establish a deprivation of his equal protection and due process rights (Filing No. 78 at CM/ECF pp. 3-10). For the reasons discussed below, the Court agrees.

1.  *Equal Protection*

The Equal Protection Clause "requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr*, 31 F.3d 727, 731 (8th Cir. 1994). To state an equal

-11-

protection claim, a plaintiff must establish that he was treated differently from others similarly situated. *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998); *see also Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (concluding that to state a class-of-one equal protection claim, a plaintiff must allege that a defendant intentionally treated her differently from others who are similarly situated and that no rational basis existed for the difference in treatment). Different treatment of dissimilarly situated persons does not violate the equal protection clause. *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 21 F.3d 237, 242 (8th Cir. 1994).

Here, the undisputed facts show that in 2006 the LRC enacted Policy IM-02 (LRC) (Filing No. 79-8). This Policy prohibited all patients from possessing personally-owned computers. (*Id*.) Despite Policy IM-02, and other LRC policies related to patient personal property, Montin was permitted to use a personally-owned computer (Filing No. 79-9). This privilege was not given to any other patient at LRC and Montin has not identified any other patient who was similarly situated in all relevant respects. Absent this showing, defendants' removal of Montin's personally-owned computer does not violate the Equal Protection Clause. *See Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) ("To establish a violation of the Equal Protection Clause, . . . [plaintiff] must show that he was

treated differently than other persons who were 'in all relevant respects similarly situated.'"). Accordingly, defendants are entitled to summary judgment on Montin's equal protection claim.

   *2. Due Process*

In addition to his equal protection claim, Montin alleges defendants' removal of his computer violated his due process rights. To establish a due process claim, Montin must demonstrate that (1) he has a protected liberty interest or property interest at stake, and (2) he was deprived of such an interest without due process of the law. *See Van Horn v. Neb. State Racing Comm'n*, 304 F. Supp. 2d 1151, 1165 (2004). To constitute a liberty interest, an individual must have a legitimate claim or entitlement to the subject of the deprivation that rises to more than a unilateral hope or expectation. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In "order to establish a liberty interest for a due process claim, the right has to be found in one of two places. The rights are found either under the U.S. Constitution or State law." *Persechini v. Callaway*, 651 F.3d 802, 806 (8th Cir. 2011).

Involuntarily committed individuals like Montin retain "constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982).

However, with regard to the nature of treatment, states "enjoy wide latitude in developing treatment regimens" for mental health patients. *Kansas v. Hendricks*, 521 U.S. 346, 368 n.4 (1997). The professionals who provide care and treatment for committed individuals do not have to employ the best possible alternative or use the least restrictive means available. *See Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 990 (7th Cir. 1998) (finding that a disagreement about which of many professionally acceptable treatment plans should have been implemented does not make out a substantive due process claim). In fact, "a decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323.

As discussed above, LRC Policy IM-02 (LRC) specifically prohibited patients from possessing personally-owned computers. (*See* Filing Nos. 79-1, 79-2, 79-3, 79-7 and 79-8.) This policy was enacted in order to protect the patient and minimize risk to the hospital (Filing No. 79-8). Despite this policy, Montin was granted the privilege of possessing and using a personally-owned computer, a privilege *contingent* upon his continued maintenance of Level III status. (*See* Filing No. 79-9.) When Montin refused

-14-

to attend group therapy sessions and otherwise engage in therapeutic activities deemed necessary for his treatment, he lost his Level III status and his personally-owned computer was removed and stored pursuant Policy IM-02 (LRC) (Filing No. 79-4 at CM/ECF pp. 3-4; Filing No. 86 at CM/ECF pp. 1-2). Notwithstanding this removal, Montin still had the ability to use a computer, if permitted by his treatment team, in a common or recreational area of the LRC during prescribed hours (Filing No. 79-4 at CM/ECF p. 3).

Although Montin is entitled to reasonably nonrestrictive confinement conditions, the undisputed facts show that defendants' decision to remove his personally-owned computer was due to his failure to participate in treatment. This decision is presumptively valid and Montin offers no evidence to show that it is a substantial departure from accepted professional judgment, practice, or standards. *Youngberg*, 457 U.S. at 323. Indeed, in a case involving pre-trial detainees, the Supreme Court has recognized that detainees "are not susceptible to easy solutions," and has held that administrators "should be accorded wide-ranging deference in the adoption and execution of the policies and practices that in their judgment are needed to preserve internal order and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). "The same is true for civil detainees." *Tunget v.*

-15-

*Smith*, No. 08-3089, 2010 WL 1241831, at \*6 (C.D. Ill. Mar. 19, 2010). Defendants are entitled to summary judgment on Montin's due process claims.

### 3. Retaliation

To the extent Montin claims defendants retaliated against him by removing his computer for refusing to participate in treatment, his claim lacks merit. As discussed above, Montin's liberty is subject to the professional judgment and decisions of his treatment team. Montin has failed to demonstrate that defendants' treatment decisions constitute such a substantial departure from accepted professional judgment as to demonstrate that defendants actually did not base their decisions on such judgment. *See Youngberg*, 457 U.S. at 323. Moreover, professionals enjoy wide latitude to offer patients incentives to comply with treatment. *Cf. McKune v. Lile*, 536 U.S. 24, 26 (2002) (concluding an essential tool of prison administration is authority to offer inmates various incentives to behave, and the Constitution accords prison officials wide latitude to bestow or revoke these perquisites as they see fit); *LaRue v. Matheney*, No. 2:08-00983, 2010 WL 786249, at \*8 (S.D.W. Va. Mar. 4, 2010) (stating that while an inmate has a right to refuse sex offender treatment, the inmate does not have a cause of action to avoid the consequences of such refusal, such as loss of privileges). A

separate order will be entered in accordance with this memorandum opinion.

DATED this 6th day of August, 2012.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court

---

\* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.